UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| RALPH NUNZIATA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 2:16-cv-00158-JAW |
| JANUS FUNDS, INC., | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS FOR DISBURSEMENT OF FUNDS**

A Maine plaintiff seeks disbursement of certain retirement funds originally belonging to his brother, a New York decedent, which the Defendant, a financial services company, deposited into the Court's Registry after instituting an interpleader counterclaim. Because of the highly irregular procedural posture of this case, the Court is reluctant to take any action to disturb the pre-existing conditions and, therefore, orders the Clerk to return the funds to the Defendant.

**I.  BACKGROUND**

On March 10, 2016, Ralph Nunziata (Plaintiff) filed a complaint for declaratory judgment in this Court against Janus Funds, Inc. (Janus, Defendant) and the Thrift Savings Plan, an agency of the United States. *Compl.* (ECF No. 1).[1] The Complaint

---

[1] The Thrift Savings Plan (TSP) moved to dismiss the Complaint on the ground that Dolores Nunziata-Lagamon was the designated beneficiary of Robert Nunziata's TSP account and that it was statutorily required to pay the proceeds to her. *U.S.'s Mot. to Dismiss* (ECF No. 11). Ralph Nunziata initially balked but then conceded the point and withdrew his opposition to the motion to dismiss. *Obj. to U.S.'s Mot. to Dismiss* (ECF No. 14); *Withdrawal of Pl.'s Obj. to United States of Am.'s Mot. to Dismiss* (ECF No. 18). On August 30, 2016, the Court granted the TSP's motion to dismiss. *Order on Status Conf.* at 2 (ECF No. 24). The Clerk's Office entered judgment as to TSP on June 17, 2017. *J.*

alleged that Ralph Nunziata, as the executor of the Estate of Robert Nunziata, is the rightful beneficiary of retirement accounts managed by Janus originally owned by Robert Nunziata, who is now deceased. *Id.* On May 4, 2016, Janus filed an answer and also filed an interpleader counterclaim, asserting that Robert Nunziata's retirement file with Janus listed Robert Nunziata's ex-wife, Dolores Nunziata-Lagamon, as the beneficiary of his retirement account and expressing concern that it not be subject to double liability. *Def.'s Ans. and Interpleader Countercl.* (ECF No. 4).

On August 18, 2016, the Court expressed concern about whether there was a real case or controversy and suggested that both potential adverse claimants had to be parties for there to be a proper interpleader action, so the Court ordered Ralph Nunziata to implead Dolores Nunziata-Lagamon. *Order* (ECF No. 21). On August 30, 2016, the Court further advised, "Once Ms. Nunziata-Lagamon is impleaded in Mr. Nunziata's direct action, Janus may wish to close the circle by interpleading Ms. Nunziata-Lagamon to respond to the interpleader concern. . . ." *Order on Status Conf.* at 3 (ECF No. 24). At the same time, as Janus was anxious to file the proceeds with the Clerk's Office while the issue of the rightful beneficiary was being resolved, the Court granted its motion to deposit the proceeds with the Clerk's Office. *Agreed Order on Def. Janus Funds, Inc.'s Interpleader Countercl.* (ECF No. 25).

On September 16, 2016, Ralph Nunziata filed an amended complaint, naming Dolores Nunziata-Lagamon as an additional party. *Am. Compl. for Decl. J., an Accounting and Turnover* (ECF No. 29). The Clerk's Office issued a summons to

---

(ECF No. 56). To cut to the quick, in its recitation of the facts underlying the pending motions, the Court has eliminated any further reference to the TSP,

2

Dolores Ruth O'Dea, formerly known as Dolores Nunziata-Lagamon, on October 19, 2016. *Summons in a Civil Action* (ECF No. 31). On March 28, 2017, the executed summons was filed. *Sheriff's Return* (ECF No. 39). Janus never closed the circle by interpleading Ms. O'Dea.

The Court issued a scheduling order on March 29, 2017. *Scheduling Order* at 1-3 (ECF No. 41). However, Ms. O'Dea failed to answer the amended complaint, and on April 26, 2017, the Clerk's Office filed an order to show cause. *Order to Show Cause* (ECF No. 42). On May 9, 2017, Attorney Jeffrey White, who had been representing Ralph Nunziata, moved to withdraw as his attorney and moved to extend the time within which to respond to the order to show cause. *Mot. to Withdraw as Counsel for the Pl.* (ECF No. 43); *Resp. to Order to Show Cause and Req. to Extend Time to File Responsive Pleading* (ECF No. 44). On May 10, 2017, the Court granted the motion to extend time and the motion to withdraw as counsel, giving Ralph Nunziata twenty-one days to find new counsel. *Order* (ECF No. 45); *Order* (ECF No. 47). On May 31, 2017, Attorney Jeffrey Bennett entered his appearance on behalf of Ralph Nunziata. *Notice of Appearance* (ECF No. 50).

On June 16, 2017, Attorney Bennett for Ralph Nunziata and Attorney John Giffune for Janus filed a Stipulation of Dismissal, dismissing the action. *Stip. of Dismissal* (ECF No. 54). On the same day, Attorney Bennett filed a voluntary dismissal as to Dolores Ruth O'Dea. *Notice of Voluntary Dismissal* (ECF No. 55).

On July 10, 2017, the Court expressed dissatisfaction with the state of the docket as a result of the dismissals, because "[t]he case is . . . over from the Court's

3

perspective, except that the Clerk's Office continues to hold monies in anticipation of a legally-sufficient direction from the parties as to what to do with the proceeds." *Status Order* at 3-4 (ECF No. 57). The Court instructed the parties to file documents under Federal Rule of Civil Procedure 67, Local Rule 67(d), and 28 U.S.C. §§ 2041-42 to enable the Court to release the funds. *Id.* at 4.

On July 31, 2017, Mr. Nunziata entered a pro se appearance. *Notice of Pro Se Appearance* (ECF No. 62). On August 2, 2017, Attorney Bennett moved to withdraw as Mr. Nunziata's attorney in light of the pro se appearance. *Mot. to Withdraw as Counsel for the Pl.* (ECF No. 64). The Court granted the motion to withdraw on August 3, 2017. *Order* (ECF No. 65).

On August 7, 2017, the Court received a letter from the Public Administrator of Queens County, New York claiming that it was the true administrator of the Estate of Robert Nunziata. *Letter* (ECF No. 66). The Public Administrator provided exhibits showing that the Surrogate's Court of Queens County, New York had revoked Ralph Nunziata's letters of Administration on August 17, 2015 and appointed the Public Administrator as executor of the Estate. *Id.* Attachs. 2-3.

On August 17, 2017, Ralph Nunziata filed a motion to withdraw the funds. *Mot. for Withdrawl [sic] of C.R.I.S. Funds* (ECF No. 69) (*Pl.'s Mot.*). On September 1, 2017, the Public Administrator filed a response, *Affirmation in Opp'n to Mot. for Withdrawal of C.R.I.S. Funds* (ECF No. 71) (*Public Administrator Opp'n*), and Janus filed a response on September 7, 2017. *Resp. to Mot. for Withdrawl of C.R.I.S. Funds* (ECF No. 72) (*Def.'s Opp'n*). On September 15 and 19, 2017, Mr. Nunziata filed

4

replies. *Obj. to the Office of Public Administration's for Queens County Affirmation in Opp'n to Pl.'s Mot. for the Withdrawl [sic] of C.R.I.S. Funds* (ECF No. 74) (*Pl.'s Public Administrator Reply*); *Pl.'s Reply to Def.'s Obj. to Pl.'s Mot. for Disbursement of Interpleader Funds* (ECF No. 75) (*Pl.'s Janus Reply*).

Meanwhile, on August 22, 2017, Janus filed its motion to direct disbursement of the funds. *Mot. Regarding Disbursement of Interpleader Funds* (ECF. No. 70) (*Def.'s Mot.*). On September 13, 2017, Mr. Nunziata filed a response to Janus's motion. *Pl.'s Obj. to Def.'s Mot. for Disbursement of Interpleader Funds* (ECF No. 73) (*Pl.'s Opp'n*). Janus did not reply to Mr. Nunziata's response and the Public Administrator did not respond to either Janus' motion or Mr. Nunziata's response.

## II. THE PARTIES' POSITIONS

### A. The Public Administrator's Position

The Public Administrator requests that the Court return the proceeds to Janus and direct it to deliver the proceeds to the Estate of Robert Nunziata. *Public Administrator Opp'n* at 4. The Public Administrator argues that the only named beneficiary of the retirement account, Dolores O'Dea, is not entitled to the funds because her divorce settlement with Robert Nunziata removed her rights to the funds and she has accordingly disclaimed all rights to the funds. *Id.* at 2-3. The Public Administrator suggests that, under New York law, it is entitled to the funds as the administrator of the Estate, and that the Plaintiff will only inherit as a beneficiary of the Estate after probate. *Id.* at 3-4 (citing *Jacobelli v. Regan*, 521 N.Y.S.2d 316 (3d Dept. 1987); N.Y. RETIRE. & SOC. SEC. LAW § 51(d)).

5

### B. Janus' Position

Janus requests that the Court transfer the funds to the registry of the Surrogate's Court, as it is in the best position to determine the true ownership of the funds. *Def.'s Mot.* at 4. In the alternative, Janus is willing to accept the return of the funds until the Surrogate's Court makes its final determination. *Id.* Janus contends that this Court no longer has subject matter jurisdiction to entertain this dispute, because there is no federal question and the amount in controversy, approximately $37,000, is significantly less than the $75,000 required for diversity of citizenship jurisdiction. *Id.* at 3-4; *Def.'s Opp'n* at 3-4. Janus insists that the proper forum for resolution of this dispute is the Surrogate's Court "[s]ince this dispute concerns funds that belonged to a decedent who resided in New York State, a decedent whose estate is being handled by a court in New York State, and a decedent whose estate is being administered by a New York State public administrator . . . ." *Def.'s Opp'n* at 4.

### C. Ralph Nunziata's Position

Mr. Nunziata vehemently objects to returning the funds to Janus or distributing the funds to the Estate. *Pl.'s Mot.* at 3. Mr. Nunziata maintains that the funds should be distributed outside of probate according to the Successor Beneficiary provisions of the accounts, which he suggests entitle him to receive the funds. *Id.* at 4. Mr. Nunziata contends that the Court must adjudicate "all issues in regards to Beneficiaries: named, unnamed or otherwise" before distributing the funds to the Estate, unless the financial institution has made public their policy that proceeds flow directly to the Estate or unless the decedent memorialized that intention in writing prior to his passing. *Pl.'s Public Administrator Reply* at 2. Mr.

6

Nunziata disputes the Public Administrator and Janus' contention that there is no beneficiary to the retirement accounts, and therefore rejects the claim that the proceeds flow to the Estate. *Id.* at 3. The Court infers from these arguments that Mr. Nunziata accepts that he is not the named beneficiary or a named successor beneficiary of the accounts, but that he believes there may be additional instructions to disperse the funds to *un*named beneficiaries that may entitle him to the funds outside of probate. *See Pl.'s Janus Reply* at 3 (referring to himself as "an Unnamed Successor Beneficiary").

Responding to the more specific arguments from Janus and the Public Administrator, Mr. Nunziata explains that the decedent was never a member of a public New York State Retirement Account, so the Public Administrator's citation to New York Retirement & Social Security Law § 51(d)) is inapplicable. *Pl.'s Public Administrator Reply* at 3. He also rejects Janus' proposal of sending the funds to the Surrogate's Court, likening that to an untimely motion for a change of venue. *Id.* Mr. Nunziata replies that the Court does have subject matter jurisdiction and that Janus' suggestion otherwise is untimely. *Pl.'s Janus Reply* at 2. Finally, Mr. Nunziata raises new issues related to the TSP retirement account, alleging that Dolores O'Dea wrongly withdrew those funds, satisfying jurisdictional requirements for him to institute a third declaratory judgment action. *Pl.'s Opp'n* at 4.

### III. DISCUSSION

#### A. Jurisdictional Deficiencies

The Court shares Janus' concerns about the Court's ability to adjudicate this case but for different reasons. Objections to subject matter jurisdiction may be raised

7

at any time, even after the end of trial. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). It is true that the amount in controversy is less than $75,000, which means the Court likely would have had little choice but to dismiss Mr. Nunziata's original complaint if it had known of these facts at the outset. But Janus only recently raised its concerns about subject matter jurisdiction, long after it initiated an interpleader counterclaim and deposited the roughly $37,000 of retirement funds with the Court. For statutory interpleader actions, the amount in controversy requirement is only $500, not $75,000 as in typical diversity actions. 28 U.S.C. § 1335(a); *Railway Express Agency, Inc. v. Jones*, 106 F.2d 341, 344 (7th Cir. 1939) ("The mandatory requirements of [28 U.S.C. § 1335(a)] are: (a) Two or more adverse claimants; (b) citizens of different states; (c) a fund in possession of party seeking to interplead, to which the two or more adverse claimants are making claim; (d) said sum exceeds $500"). Since the roughly $37,000 here far exceeds $500, the amount in controversy was no obstacle to subject matter jurisdiction once Janus initiated the interpleader action.

In addition to the diversity of citizenship and amount in controversy requirements, statutory interpleader requires multiple adverse claimants to the interpleaded property:

> The stakeholder[ ] names as defendants those who are potential claimants to the stake. Typically, the [claimants] are not antagonistic to the [stakeholder] but, rather, are pitted against one another. That circumstance follows ineluctably from the principle that interpleader is not available unless the [claimants]' claims are "adverse" to each other.

*Hudson Sav. Bank v. Austin*, 479 F.3d 102, 107 (1st Cir. 2007) (citing WRIGHT AND MILLER, FED. PRAC. & PROC. § 1705 (3d ed. 2001)) (internal citations omitted).

The level of adversity or the likelihood that a stakeholder will face double liability is a "relatively undemanding jurisdictional requirement" because the statute allows for interpleader when two or more adverse claimants "are claiming or may claim to be entitled" to the same property. *Metro. Prop. & Cas. Ins. Co. v. Shan Trac, Inc.*, 324 F.3d 20, 24 (1st Cir. 2003); 28 U.S.C. § 1335(a)(1). It is frequently true that one or more claims are tenuous, but that does not defeat jurisdiction because "the adverse claims need attain only 'a minimal threshold level of substantiality.'" *See Equitable Life Assur. Soc. of the U.S. v. Porter-Englehart*, 867 F.2d 79, 84 (1st Cir. 1989).

Nevertheless, numerous courts have found jurisdiction lacking when there was no real or reasonable fear of double liability or vexation of conflicting claims because there was only one claimant, or there were two potential claimants but one of the claimants withdrew or disavowed all rights to the property. *See Indianapolis Colts v. Mayor & City Council of Baltimore*, 741 F.2d 954, 957 (7th Cir. 1984); *Libby, McNeill, & Libby v. City Nat. Bank*, 592 F.2d 504, 508 (9th Cir. 1978); *Vanderlinden v. Metro. Life Ins. Co.*, 137 F. Supp. 2d 1160, 1164 (D. Neb. 2001); WRIGHT AND MILLER, FED. PRAC. & PROC. § 1705 (3d ed. 2017) ("This requirement is not met when one of the claims clearly is devoid of substance, or one of the claimants . . . has dropped the claim . . ."). A stakeholder ordinarily may not eschew or "shift their responsibilities" and "cho[o]se instead to burden the district court" when they have other perfectly acceptable means of resolving the matter or avoiding liability. *See Forcier v. Metro. Life Ins. Co.*, 469 F.3d 178, 182, n.3 (1st Cir. 2006).

Here, it is doubtful whether Dolores O'Dea was a proper claimant because she was barred by the divorce settlement from seeking the funds, and, more to the point, she disclaimed all rights to the funds. Mr. Nunziata's status as an interpleader claimant is also unclear. If he is not named or involved anywhere in the policy documents, as Janus argues, it is difficult to see how Janus could have reasonably feared liability from his claim. When Mr. Nunziata filed the original complaint, he sought the funds as the executor of the Estate, *Compl.* ¶¶ 18-19, 22, 24, but it now appears that he lacked standing for that original claim because the Surrogate's Court actually revoked his letters of administration long before he instituted this lawsuit. Despite this, the Court need not resolve these potential jurisdictional concerns because the parties dismissed the action.

Even if Mr. Nunziata attempted to resurrect this interpleader action by filing another complaint, the Court's ability to adjudicate the matter is not clear, and the Court would decline to decide the issues now that it is obvious there is no danger of multiple liability and New York courts are fully capable of resolving the matter. *See Hudson*, 479 F.3d at 107-08 ("At bottom, interpleader is an equitable mechanism"); *NYLife Distributors, Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 379 (3d Cir. 1995) ("district courts have traditionally assumed that they possess broad equitable discretion to decline jurisdiction over a statutory interpleader lawsuit where in their view there is a pending state proceeding that obviates the need for the federal action"); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) ("it is well recognized that interpleader is an equitable remedy, and a federal court may abstain

from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held doubly liable").

Since this matter is closed and is likely unfit for any future proceedings in this Court, the only question remaining is what to do with the funds in the Court Registry.

### B. Distribution of Funds after Dismissal of Interpleader Action

The parties did not cite any First Circuit authority directly addressing the proper means of distributing property held by a court following a dismissed interpleader action, and the Court did not locate any. Very few courts have addressed circumstances similar to these. The Court looks to the approach of the Seventh Circuit in *Reliance National Insurance Co. v. Great Lakes Aviation, Ltd.*, 430 F.3d 412 (7th Cir. 2005). In *Reliance*, an insurer initiated an interpleader action to settle various claims arising out of an aviation accident, bringing the passengers, plane owners, and the pilots into a single suit. *Id.* at 414. The Seventh Circuit addressed a scenario the district court might face on remand: that none of the claimants was entitled to the $1 million the insurer deposited with the court. *Id.* at 416-17. The *Reliance* Court concluded the best solution in the event of the unresolved interpleader action was to return the funds to the depositor. *Id.* at 418 ("Logically the money should go back to Reliance . . . . The money is, after all, Reliance's, which it deposited in court solely in order to avoid being dragged into the disputes between its insureds and their tort claimants"); *see also In re Hat*, 363 B.R. 123, 144 (Bankr. E.D. Cal. 2007) ("Since the court has determined that neither . . . counter-defendant[ is] entitled to any portion of the indemnity, it is left to determine whether or not those funds may

11

be returned to the interpleading plaintiff. The court finds that is the appropriate remedy").

The Court notes that at least one case suggests this approach may not always be proper. The Ninth Circuit held that it was error for a district court to sua sponte direct the funds back to the depositor after the claimants failed to prosecute the case because the district court had properly accepted the property and dismissed the depositor with prejudice. *Soc'y Ins. Co. v. Nystrom*, No. 16-16812, 2017 WL 5987764, at *1 (9th Cir. Dec. 4, 2017) (unpublished). The *Nystrom* Court explained that "[t]he primary purpose of interpleader is 'for the stakeholder to protect itself against the problems posed by multiple claimants to a single fund'" and reasoned that the district court's order "defeated the purpose of the interpleader and denied [the depositor] the protection to which it was entitled." *Id.* (quoting *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012)).

The Court is convinced that the facts and reasoning in *Reliance* are more applicable to this situation than those in *Nystrom*. The Court is not acting sua sponte, but rather, it is addressing motions and briefing from the parties. As with the interested depositor in *Reliance,* which sought the return of the funds, Janus is willing to retake possession of the property pending further action in the New York courts. As such, Janus is not unfairly deprived of any protection to which it was entitled and continues to seek.

The one hint the Court has located from the First Circuit aligns with this approach. In *Equitable Life Assurance Society of the U.S. v. Porter-Englehart*, 867

12

F.2d at 91 n.3, the First Circuit briefly addressed in a footnote the argument that a district court lacked jurisdiction over a portion of some interpleaded funds because one of the claims for that portion was frivolous. The *Porter-Englehart* Court wrote that if it "were to conclude that the district court lacked jurisdiction over that aspect, the remedy would be to vacate the . . . Order awarding the money to [the victorious claimant] and to insist that [she] return the money to the registry, so that the [insurer] could withdraw it . . ." *Id.* The First Circuit did not elaborate further, explaining that the issue was moot because the insurer would have paid the same claimant those same funds in the end. *Id.* This suggests that the approach in *Reliance* is correct, and the Court may return the funds to the depositor in the event there is no resolution of the interpleader action or it subsequently discovers potential jurisdictional deficiencies.

Finally, the Court is reluctant to transfer the funds to the Surrogate's Court without a request from that court. In light of the jurisdictional concerns, which Janus itself raised, the safer course of action is to return the funds without further direction from the Court because it restores the situation as it existed before the start of this lawsuit.

### C. Ultimate Entitlement to the Funds

The Court's decision does not resolve or imply a proper resolution one way or the other about who may ultimately be entitled to the retirement funds. Mr. Nunziata has a point about the inapplicability of the Public Administrator's citation to New York Retirement & Social Security Law § 51(d) because the private retirement account at issue is not a New York State public pension or retirement account. At

13

the same time, the Public Administrator may be correct that the Estate is entitled to the funds if the terms of the plan or other applicable New York caselaw or statute specify that the funds shall fall to the Estate when there is no named beneficiary that can take them. *See e.g.* N.Y. EST. POWERS & TRUSTS LAW § 5-1.4 (specifying that subsequently divorced spouses are to be treated as predeceased for purposes of interpreting retirement benefits plans unless the terms of the policy explicitly provide otherwise).

The Court need not address these questions because the parties have dismissed the action and, in any event, the Court can no longer conclude this matter is fit for equitable resolution through an interpleader action.

## IV. CONCLUSION

The Court DENIES Ralph Nunziata's Motion for Withdrawl [sic] of C.R.I.S. Funds (ECF No. 69). The Court GRANTS in part and DENIES in part Janus' Motion Regarding Disbursement of Interpleader Funds (ECF No. 70). The Court ORDERS the Clerk to return the funds that Janus deposited, together with any interest and income earned theron. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money a fee equal to ten percent of the income earned. Such fee shall not exceed that authorized by the Judicial Conference of the United States.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2018